**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JAMAL SINGH, BIANCA ALFORD, TAMARA AUGUSTIN, JOHN DAVI, ALEXANDRA FLOWERS, TEDDY JEAN-JACQUES, NIKOLAS KIMMEL, FRANCIS RODRIGUEZ, EVERTON WILLIAMS, HYMAN SKEEN, LOTISHA LOFTERS, *on behalf of themselves and all others similarly situated*,

Plaintiffs,

-against-

NYU LANGONE HOSPITALS,

Defendant.

**Case No.: 1:26-cv-04322**

**CLASS AND COLLECTIVE ACTION FIRST AMENDED COMPLAINT**

JURY TRIAL DEMANDED

**COMPLAINT**

Plaintiffs JAMAL SINGH, BIANCA ALFORD, TAMARA AUGUSTIN, JOHN DAVI, ALEXANDRA FLOWERS, TEDDY JEAN-JACQUES, NIKOLAS KIMMEL, FRANCIS RODRIGUEZ, EVERTON WILLIAMS, HYMAN SKEEN, LOTISHA LOFTERS (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their undersigned attorneys, as and for their Class and Collective Action Amended Complaint against Defendant NYU LANGONE HOSPITALS (collectively, "Defendant" or "NYU Langone"), state as follows:

**INTRODUCTION**

1. This is a civil action seeking damages and equitable relief for Defendant's violations of Plaintiffs' rights guaranteed to them by: (i) the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a); (ii) the overtime provisions of the New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 160, 190 et seq., N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2; (iii) the NYLL's requirement that employers furnish employees with a wage notice containing

specific categories of accurate information at hire, NYLL § 195(1); (iv) the NYLL's requirement that employers furnish employees with wage statements containing specific categories of accurate information on each payday, NYLL § 195(3); (v) the New York Common Law and (vi) any other claim(s) that can be inferred from the facts set forth herein.

2. NYU Langone is a not-for-profit corporation engaged in providing healthcare services to patients throughout New York, and at all relevant times employed Plaintiffs and Class Members as "Supervisor-Patient Access" and “Manager-Patient Access” at various NYU Langone locations.

3. As set forth more fully below, NYU Langone misclassified Plaintiffs and Class Members as exempt employees, required them to work in excess of 40 hours per week without overtime compensation—including through mandatory off-site monitoring duties totaling approximately 5–16 additional hours per week—and systematically denied them uninterrupted meal breaks as required by New York law.

4. Plaintiffs bring this action on behalf of themselves and all others similarly situated to recover unpaid overtime wages, statutory penalties, liquidated damages, interest, and reasonable attorneys' fees and costs under the FLSA and Articles 6 and 19 of the NYLL and the wage orders promulgated thereunder by the New York State Department of Labor.

## JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 in that this is an action arising under the FLSA, 29 U.S.C. § 201 et seq., and pursuant to 29 U.S.C. § 216(b).

6. This Court has supplemental jurisdiction over the claims arising under the NYLL pursuant to 28 U.S.C. § 1367 in that the state law claims are so closely related to Plaintiffs' FLSA claims as to form the same case or controversy under Article III of the United States Constitution.

7. Venue is proper in this judicial district under 28 U.S.C. § 1391(b), as a substantial part of the events and omissions giving rise to the claims occurred in this judicial district.

## PARTIES

8. At all times relevant herein, Plaintiff Jamal Singh was and is a resident of the State of New York, Queens County, and has been employed by NYU Langone from October 2016 through the present. Plaintiff Singh was promoted to Supervisor-Patient Access in or around May 2023.

9. At all times relevant herein, Plaintiff Bianca Alford was and is a resident of the State of New York, Kings County, and has been employed by NYU Langone from July 19, 2019 through the present as a Supervisor-Patient Access.

10. At all times relevant herein, Plaintiff Tamara Augustin was and is a resident of the State of New Jersey, Essex County, and has been employed by NYU Langone from May 2019 through the present as a Supervisor-Patient Access.

11. At all times relevant herein, Plaintiff John Davi was and is a resident of the State of New York, Kings County, and has been employed by NYU Langone from September 16, 2013 through the present. Plaintiff Davi was promoted to Supervisor-Patient Access in or around June 2019.

12. At all times relevant herein, Plaintiff Alexandra Flowers was and is a resident of the State of New York, Bronx County, and was employed by NYU Langone from March 8, 2023 through December 2, 2025 as a Supervisor-Patient Access.

13. At all times relevant herein, Plaintiff Teddy Jean-Jacques was and is a resident of the State of New York, Kings County, and has been employed by NYU Langone from in or around

2008 through the present. Plaintiff Jean-Jacques was hired as a per diem employee, became full-time in 2010, and was promoted to Supervisor-Patient Access in or around 2014.

14. At all times relevant herein, Plaintiff Nikolas Kimmel was and is a resident of the State of New Jersey, Middlesex County, and has been employed by NYU Langone from February 24, 2022 through the present as a Supervisor-Patient Access at NYU Langone Hospital-Brooklyn.

15. At all times relevant herein, Plaintiff Francis Rodriguez was and is a resident of the State of New York and has been employed by NYU Langone from May 11, 2016 through the present. Plaintiff Rodriguez was promoted to Supervisor-Patient Access at the NYU Brooklyn campus in or around August 5, 2017.

16. At all times relevant herein, Plaintiff Everton Williams was and is a resident of the State of Pennsylvania, Monroe County, and has been employed by NYU Langone for approximately 25 years through the present. Plaintiff Williams was promoted to Supervisor-Patient Access in or around 2011.

17. At all times relevant herein, Plaintiff Hyman Skeen was and is a resident of the State of New York, Queens County, and has been employed by NYU Langone from June 30, 2023 through the present as a Manager-Patient Access.

18. At all times relevant herein, Plaintiff Lotisha Lofters was and is a resident of the State of New York, New York County, and was employed by NYU Langone from June 30, 2023 through June 2, 2026 as a Manager-Patient Access.

19. At all times relevant herein, NYU Langone is a not-for-profit corporation duly organized under and existing by virtue of the laws of the State of New York, having its principal place of business at 550 First Avenue, New York, New York 10016.

20. NYU Langone is an employer within the meaning of the FLSA, 29 U.S.C. § 203(d), and the NYLL, § 190.

21. At all relevant times, NYU Langone engaged in an enterprise whose annual volume of sales made or business done is not less than $500,000.00, the activities of which affect interstate commerce in that the employees of NYU Langone handle goods and materials produced outside of New York—including computers, laptops, office supplies, medical equipment, and other items—that have moved in interstate commerce. NYU Langone is thus an employer subject to the jurisdiction of the FLSA and was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and state wage laws at all relevant times. The work performed by Plaintiffs and Class Members was directly essential to the business operated by NYU Langone.

## FLSA COLLECTIVE ACTION ALLEGATIONS

22. Plaintiffs bring the First Cause of Action in this Complaint, which arises under the FLSA, individually and on behalf of all similarly situated persons who were employed by NYU Langone as "Supervisor-Patient Access" and "Manager-Patient Access" or in a substantially similar position, who were classified as exempt from overtime, and who were employed within three (3) years prior to the filing of this Complaint and who elect to opt into this action (the "FLSA Collective Plaintiffs").

23. The FLSA Collective Plaintiffs consist of no fewer than 100 similarly situated current and former Supervisor-Patient Access and "Manager-Patient Access" employees employed by NYU Langone who worked in excess of forty (40) hours per week but were not paid the required overtime wages, and who are victims of NYU Langone's common policies and practices that have violated their rights under the FLSA.

24. As part of its regular business practices, NYU Langone has intentionally, willfully, and repeatedly harmed Plaintiffs and the FLSA Collective Plaintiffs by engaging in a pattern, practice, and/or policy of violating the FLSA, including by: (a) misclassifying Supervisor-Patient Access and "Manager-Patient Access" employees as exempt from overtime; (b) requiring employees to perform mandatory off-site monitoring duties of approximately 5–16 hours per week without overtime compensation; and (c) failing to pay overtime wages for all hours worked in excess of forty (40) per week.

25. NYU Langone has engaged in its unlawful conduct pursuant to a policy of minimizing labor costs and denying employees compensation to which they are legally entitled.

26. NYU Langone's unlawful conduct has been intentional, willful, and in bad faith, and has caused significant damages to Plaintiffs and the FLSA Collective Plaintiffs.

27. The FLSA Collective Plaintiffs would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Those similarly situated employees are known to NYU Langone and are readily identifiable and locatable through NYU Langone's records. These similarly situated employees should be notified of and allowed to opt into this action pursuant to 29 U.S.C. § 216(b).

**RULE 23 CLASS ALLEGATIONS**

28. Plaintiffs bring the state law claims in this Complaint pursuant to Federal Rules of Civil Procedure Rule 23, on behalf of all current and former employees classified as "Supervisor-Patient Access" and "Manager-Patient Access" or a substantially similar title who were classified as exempt from overtime and employed by NYU Langone on or after the date that is six (6) years and two-hundred-and-twenty-eight (228) days prior to the filing of this Complaint, pursuant to New York's Executive Order tolling during the COVID-19 pandemic (the "Class Members").

29. The Class Members are readily ascertainable. The number and identities of the Class Members are determinable from the records of NYU Langone, as are the hours worked, schedules, and rates of pay for each Class Member. For purposes of notice and other purposes related to this action, their names and addresses are readily available from NYU Langone. Notice can be provided by means permissible under F.R.C.P. 23.

30. The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Upon information and belief, there are approximately 100 or more Supervisor-Patient Access and "Manager-Patient Access" employees employed by NYU Langone at various locations throughout New York who have been subjected to the same unlawful practices. The precise number of such persons is unknown, as the facts on which the calculation of that number rests are presently within the sole control of NYU Langone.

31. Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of that which would be sought by each member of the Class in separate actions. All Class Members were subject to the same corporate practices of NYU Langone, as alleged herein, of: (i) misclassifying Supervisor-Patient Access and "Manager-Patient Access" employees as exempt employees when they lacked genuine supervisory authority; (ii) failing to pay overtime wages for hours worked in excess of 40 hours per week; (iii) requiring unpaid off-site monitoring duties; (iv) requiring work outside scheduled shifts without compensation; (v) failing to provide wage notices at the time of hiring and annually as required by NYLL § 195(1); and (vi) failing to provide accurate wage statements as required by NYLL § 195(3). NYU Langone's corporate-wide policies and practices affected all Class Members similarly, and NYU Langone benefited from the same type of unfair and/or wrongful acts as to

each Class Member. Plaintiffs and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

32. Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

33. A class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against an institutional defendant. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each individual Class Member are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for individual Class Members to redress the wrongs done to them. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and/or varying adjudications, establishing incompatible standards of conduct for NYU Langone and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties.

34. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions

provide Class Members who are not named in the Complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

35. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members, including:

a. Whether NYU Langone employed Plaintiffs and Class Members within the meaning of the FLSA and the NYLL;

b. What were and are the policies, practices, and procedures of NYU Langone regarding the classification of Supervisor-Patient Access and "Manager-Patient Access" employees as exempt from overtime;

c. Whether NYU Langone misclassified Supervisor-Patient Access and Manager-Patient Access employees as exempt when they lacked genuine supervisory authority to hire, fire, discipline, or set wages;

d. Whether NYU Langone properly compensated Plaintiffs and Class Members for all hours worked, including off-site monitoring duties and work performed outside scheduled shifts;

e. Whether NYU Langone properly compensated Plaintiffs and Class Members for overtime hours worked in excess of 40 hours per week;

f. Whether NYU Langone provided accurate wage notices to Plaintiffs Singh, Flowers, Kimmel, Skeen, Lofters, and Class Members at the time of hiring and annually as required by NYLL § 195(1);

g. Whether NYU Langone provided accurate wage statements to Plaintiffs and Class Members on each payday as required by NYLL § 195(3); and

h. Whether Class Members are entitled to damages, and if so, the means of measuring such damages.

## STATEMENT OF FACTS

***NYU Langone's Systematic Misclassification Scheme***

36. NYU Langone employed Plaintiffs and Class Members as "Supervisor-Patient Access" and “Manager-Patient Access” at various NYU Langone Hospital locations throughout New York, including facilities in Manhattan, Brooklyn, and other locations.

37. Despite their title of "Supervisor" and “Manager,” Plaintiffs and Class Members were misclassified as exempt from overtime under the executive exemption of the FLSA and NYLL when they in fact performed primarily non-exempt duties and lacked the genuine supervisory authority required for that exemption.

38. NYU Langone classified the Supervisor-Patient Access position as "FLSA Exempt" in its job descriptions and personnel systems, and labeled the position "Entry Level Leadership" in its internal systems—a designation that itself reflects NYU Langone's recognition that the role did not carry meaningful management authority.

39. Plaintiffs and Class Members exercised no meaningful supervisory authority. Specifically, they had:

a. No power to hire or fire any employee;

b. No authority to discipline employees or conduct performance reviews that lead to any personnel action—including that performance reviews conducted by Plaintiffs have never resulted in a promotion, a performance improvement plan, or a termination, and Plaintiffs do not believe they ever could;

c. No ability to set employee wages, schedules, or rates of pay without approval from upper management;

d. No independent judgment on matters of significance; and

e. No authority to approve overtime. When overtime was needed, Plaintiffs were required to follow a set procedure of requesting volunteers and awarding overtime to the most senior employee.

40. The actual day-to-day responsibilities of Supervisor-Patient Access and Manager-Patient Access employees were primarily non-exempt clerical and quality control tasks, including: scanning patients' insurance cards into their records, reviewing files to ensure required information was correctly entered, documenting reasons for overtime, handling emails regarding staff coverage while following established policies, performing approximately one hour of compliance work per week, and reviewing files of direct reports to ensure all statutorily required information was input.

41. Plaintiffs and Class Members spent the substantial majority of their time reviewing and auditing completed work product rather than directing employees or exercising any genuine management function.

***Unpaid Overtime—Regular Scheduled Hours***

42. Plaintiffs and Class Members were paid annual salaries ranging from approximately $74,766.55 to $110,000.

43. NYU Langone classified Supervisor-Patient Access and Manager-Patient Access employees as working 35 hours per week for purposes of defining full-time employment. In practice, however, Plaintiffs and Class Members regularly worked 40 or more hours per week during their scheduled shifts alone—meaning that even before accounting for off-site monitoring duties and other work performed outside scheduled hours, Plaintiffs and Class Members worked

at least 5 hours per week in excess of NYU Langone's own full-time threshold without any additional compensation.

44. Plaintiffs' regular scheduled shifts included the following:

a. Wednesday–Friday: 4:00 PM – 12:00 AM and Saturday–Sunday: 12:00 PM – 8:00 PM, totaling 40 hours per week;

b. Monday–Friday: 12:00 AM – 8:00 AM, totaling 40 hours per week;

c. Monday–Friday: 4:00 PM – 12:00 AM, totaling 40 hours per week;

d. Monday–Friday: 8:00 AM – 4:00 PM, totaling 40 hours per week;

e. Monday–Friday: 7:30 AM – 3:30 PM, totaling 40 hours per week;

f. Monday–Friday: 5:30 AM – 1:30 PM, totaling 40 hours per week;

g. Monday–Friday: 9:00 AM – 5:00 PM, totaling 40 hours per week; and

h. Monday–Friday: 12:00 PM – 8:00 PM, totaling 40 hours per week.

45. Because NYU Langone misclassified Plaintiffs and Class Members as exempt from overtime, it did not pay them overtime wages for any hours worked in excess of 40 hours per week, including the hours worked above NYU Langone's own 35-hour full-time threshold during their regular scheduled shifts.

***Unpaid Off-Site Monitoring Duties***

46. In addition to their regular scheduled hours, NYU Langone required Plaintiffs and Class Members to perform mandatory "off-site monitoring" ("OSM") duties without any additional compensation.

47. OSM duties required supervisors and managers to carry their work cell phones at all times during assigned OSM shifts and remain available to handle operational issues.

48. OSM shifts were assigned on weekends, holidays, and overnight hours, and also whenever other supervisors and managers were on PTO, out sick, or on leave—meaning the OSM burden expanded significantly whenever any member of the management team was absent.

49. Originally, OSM was required only on holidays and when the designated weekend supervisor and manager was on PTO. In or around 2020, NYU Langone expanded OSM requirements to include a mandatory weekend rotation among all supervisors and managers, purportedly "to ensure fairness," significantly increasing the frequency and burden of uncompensated OSM assignments for all Plaintiffs and Class Members.

50. During OSM shifts, supervisors and managers were required to: (a) manage staff call-outs and arrange coverage; (b) handle systems issues including equipment malfunctions, network outages, and Epic downtime; (c) address staffing discrepancies; (d) resolve registration and admission processing errors; (e) serve as contact points for other departments including nursing administration, social work, and patient experience; (f) respond to safety concerns and potential patient safety issues; (g) document call-outs via email; (h) complete sick questionnaires; (i) determine appropriate pay codes in NYU Langone's MyTime payroll system; and (j) escalate issues to management as necessary.

51. OSM shifts totaled approximately 5–16 additional hours per week beyond Plaintiffs' and Class Members' regular scheduled hours, and regularly required supervisors and managers to respond to phone calls, emails, and operational matters during what should have been their personal time.

52. NYU Langone distributed OSM schedules regularly via email, showing rotating assignments covering overnight coverage on Saturdays and Sundays as well as time blocks of 8:00 AM – 12:00 PM, 12:00 PM – 8:00 PM, and 8:00 PM – 12:00 AM on weekends.

53. NYU Langone maintained a detailed OSM log documenting specific assignments from at least November 2024 through October 2025, which reflects dozens of assignments across the management team—including assignments covering holidays, back-to-back weekend assignments, assignments absorbed by other supervisors and managers due to colleagues' PTO, FMLA leave, and personal leave, and full 24-hour holiday coverage shifts—all performed without overtime compensation.

54. In or around February 2022, NYU Langone issued a formal "Off-Site Monitoring Expectations and Responsibilities" document confirming that "Supervisors must have their cellphone on them when they are assigned to monitor offsite" and "must be available to assist if something out of the ordinary occurs," establishing OSM as a mandatory, substantive work obligation.

55. In or around November 2024, NYU Langone issued a formal "Patient Access Off-Site Monitoring Standard Operating Procedures" document. That document acknowledged that supervisors could be "overwhelmed with a high volume of calls during OSM" and established a process by which supervisors could request "compensation days"—an acknowledgment by NYU Langone itself that OSM work was substantial and burdensome.

56. The compensation day process was designed in a manner that made approval difficult and rare. Supervisors were required to immediately escalate feedback to their direct manager, send a detailed email to management and department directors documenting every call and issue handled during the OSM period, and wait for management's subjective determination of whether the quantity and nature of the matters warranted compensation.

57. When compensation days were approved at all, supervisors and managers received only a single day off—not overtime pay for all OSM hours worked. NYU Langone did not pay

Plaintiffs and Class Members any overtime wages for OSM hours worked, despite its own written acknowledgment that these duties were sufficiently burdensome to warrant some form of compensation.

58. In or around September 2021, Plaintiff Rodriguez inquired with NYU Langone Human Resources representative Shellie-Ann Proute about whether the Supervisor-Patient Access position qualified for on-call pay under NYU Langone's own Policy 3.9 On-Call and Stand-by Duty.

59. Rodriguez specifically referenced the policy's provision stating that supervisory and management employees designated under Section 3.11(a) were entitled to three-quarters of their hourly base rate for each hour on-call.

60. HR representative Proute responded on September 20, 2021 that the policy "is not applicable at our location and we do not currently have comparable policies"—a written confirmation by NYU Langone's own Human Resources department that despite requiring supervisors and managers to perform substantial on-call duties, NYU Langone had no intention of compensating them for that time.

***Systematic Denial of Meal Breaks***

61. NYU Langone systematically denied Plaintiffs and Class Members uninterrupted meal breaks as required by New York Labor Law § 162, which mandates that employees working shifts of more than six hours receive an uninterrupted meal break of at least thirty minutes.

62. Despite Plaintiffs and Class Members working 8-hour shifts and longer, NYU Langone did not provide scheduled, uninterrupted meal breaks free from work duties.

63. Supervisors were told they could take meal breaks "at their discretion," but were simultaneously required to "ensure that operations are not left unattended and that appropriate

management oversight remains in place" during any such break, a requirement that by definition rendered meal breaks neither uninterrupted nor off-duty.

64. On August 21, 2025, Plaintiff Singh raised the meal break issue in writing with Associate Director Rolando Saavedra, noting his understanding that "all employees—regardless of salaried status—are entitled to a 30-minute uninterrupted, unpaid meal break" and requesting confirmation of the current policy.

65. Saavedra responded in writing the same day, acknowledging that "it is difficult to guarantee uninterrupted meal breaks due to the nature of our responsibilities" and directing supervisors to "use our best judgement and discretion when we take them."

66. This written response by a senior NYU Langone executive constitutes an acknowledgment that uninterrupted meal breaks were not being provided.

67. Following further escalation by Singh, Plaintiff Lotisha Lofters conveyed to supervisors in or around October 2025 that NYU Langone's HR department had confirmed that supervisors were "entitled to a one-hour uninterrupted meal break."

68. Despite this confirmation, NYU Langone took no steps to implement any system to ensure compliance, provide coverage during meal periods, or compensate supervisors for meal breaks that were interrupted or not taken.

69. Instead, supervisors continued to be required to remain available during meal periods and respond to operational demands.

70. The systematic denial of meal breaks compounded the overtime violations described above. Because Plaintiffs and Class Members were already working 40 or more hours per week on their regular schedules, the time spent working through meal breaks constituted additional compensable work time for which no overtime wages were paid.

71. Plaintiffs and Class Members raised concerns about the lack of uninterrupted meal breaks with NYU Langone leadership on multiple occasions and through multiple channels over an extended period.

72. Despite these complaints, NYU Langone failed to remedy the violations, provide coverage during meal periods, or compensate supervisors for meal-time worked.

***Additional Unpaid Work Outside Scheduled Hours***

73. In addition to OSM duties, NYU Langone required Plaintiffs and Class Members to perform work outside their scheduled shifts without compensation.

74. This included pre-shift work such as early clock-ins to cover departing supervisors and managers when colleagues were sick or absent, post-shift attendance at training sessions and departmental meetings, and participation in scheduling meetings held outside assigned working hours to coordinate coverage for over 150 employees.

75. When supervisors and managers raised concerns about compensation for time spent on work outside their scheduled hours, NYU Langone informed them that such time was "not deemed sufficient justification to alter or shorten" their assigned shifts and instructed them to refrain from performing work outside their hired working hours—while continuing to expect and require that work to be performed.

76. NYU Langone also required supervisors and managers to personally coordinate coverage for weekend on-call shifts when they were scheduled for vacation or leave, rather than having management arrange such coverage.

77. This coordination work was performed outside scheduled hours and without compensation.

***Holiday Work Without Additional Compensation***

78. NYU Langone required Plaintiffs and Class Members to work on holidays without receiving holiday pay or any additional compensation of any kind beyond their regular salary.

79. Plaintiffs were assigned to provide 24-hour management coverage during holidays on a rotating basis throughout the year.

80. The holidays covered included New Year's Day, Martin Luther King Jr. Day, Presidents' Day, Memorial Day, Independence Day, Labor Day, Thanksgiving, and Christmas.

81. These 24-hour coverage assignments were in addition to supervisors' and managers' regular scheduled shifts, meaning that in workweeks containing a holiday assignment, supervisors and managers regularly worked well in excess of 40 hours per week without receiving any overtime compensation.

82. In or around November 2024, NYU Langone distributed a "Supervisor Shift Assignment 2025" document assigning each supervisor responsibility for providing holiday coverage during a specific month of the year, formalizing the holiday rotation and confirming that holiday work was a mandatory, planned component of the position rather than an occasional exception.

83. Despite working full 24-hour holiday coverage shifts in addition to their regular scheduled hours, Plaintiffs and Class Members received no holiday premium pay, no overtime wages, and no additional compensation of any kind.

***NYU Langone's Knowledge of Claims and Post-Notice Schedule Restructuring***

84. On September 11, 2025, counsel for Plaintiff Singh sent a formal Notice of Representation to NYU Langone via certified mail, advising NYU Langone that Singh was asserting unpaid wage claims under the FLSA and NYLL and explicitly warning against any retaliatory actions taken against Singh following receipt of the letter.

85. On November 20, 2025, counsel for Plaintiff Singh sent a second Notice of Representation to Katie Sheehan, Department Senior Director at NYU Langone, and Steven Schley, Human Resources Representative, via electronic mail, reiterating Singh's unpaid wage claims under the FLSA and NYLL and again explicitly warning NYU Langone against any retaliatory actions.

86. Despite receiving two written notices of Singh's wage claims and two explicit anti-retaliation warnings, NYU Langone took no steps to remedy the violations or to compensate supervisors for OSM duties.

87. On May 6, 2026, Associate Director Rolando Saavedra issued a formal memorandum to Plaintiffs and other Supervisor-Patient Access and Manager-Patient Access employees announcing a significant restructuring of management coverage schedules across the Patient Access Department.

88. In that memorandum, NYU Langone acknowledged that "off-site monitoring requirements place a disproportionate burden on management staff" and that the "volume of inbound calls received during [OSM] periods—spanning workflow questions, scheduling discrepancies, patient number issues, staffing callouts, and real-time problem resolution—warrant onsite presence."

89. These written admissions by NYU Langone's own senior leadership confirm that NYU Langone was fully aware that OSM duties were substantial, burdensome, and required active work by supervisors and managers throughout the relevant period.

90. The memorandum further announced that "[r]outine off-site monitoring will be eliminated from the standard rotation" going forward, an acknowledgment that the prior OSM

system imposed demands on management staff that NYU Langone itself has now determined to be unsustainable.

91. The memorandum also announced that management coverage schedules would be restructured, with new schedules to be assigned through a seniority-based selection process effective 45 days from schedule confirmation.

92. For many long-tenured Plaintiffs and Class Members, this restructuring resulted in drastic changes to schedules they had maintained for years, disrupting their personal lives and outside employment arrangements.

93. These schedule changes occurred following NYU Langone's receipt of Singh's wage claims.

## INDIVIDUAL PLAINTIFF ALLEGATIONS

***Plaintiff Jamal Singh***

94. Plaintiff Jamal Singh has been employed by NYU Langone since October 2016 through the present, earning an annual salary of approximately $87,000.

95. Singh initially worked as a Registrar and was promoted to Supervisor-Patient Access in or around May 2023, at which time his pay switched from hourly to salary and his position was reclassified from non-exempt to exempt.

96. From in or around May 2023 until the present, Singh's regular work schedule has been Wednesday through Friday from approximately 4:00 PM until approximately 12:00 AM and Saturday through Sunday from approximately 12:00 PM until approximately 8:00 PM, totaling 40 hours worked per week.

97. In addition to his regular 40-hour schedule, from in or around May 2023 until the present, Singh has been required to perform OSM duties, which amounted to approximately 8 to 16 additional hours worked.

98. Moreover, Singh has also been required attend scheduling meetings typically held between 12:00 PM and 1:30 PM on weekdays, outside his scheduled shift, investing an additional 1 to 1.5 hours weekly, including on days and months not originally assigned to him.

99. When Singh raised concerns about compensation for this time, management informed him it was "not deemed sufficient justification to alter or shorten" his assigned shift and instructed him to refrain from attending any meetings outside his hired working hours.

100. As documented in the written correspondence described above, Singh raised concerns about the denial of uninterrupted meal breaks with NYU Langone management on multiple occasions between July and October 2025, including directly with Associate Director Rolando Saavedra and through escalation to NYU Langone's HR department.

101. Despite these repeated complaints through proper channels over several months, NYU Langone failed to remedy the meal break violations or provide any compensation for meal breaks worked or any of the other additional hours Singh worked.

***Plaintiff Bianca Alford***

102. Plaintiff Bianca Alford has been employed by NYU Langone from July 19, 2019 through the present as a Supervisor-Patient Access, earning an annual salary of $97,000.

103. From in or around July 19, 2019 until the present, Alford's regular work schedule has been Monday through Friday from approximately 4:00 PM until approximately 12:00 AM, for a total of 40 hours worked per week.

104. At the time of Alford's hire, OSM responsibilities were not discussed during the interview or onboarding process. Alford was not informed that she would be required to perform substantial off-schedule, uncompensated on-call duties as a condition of her employment.

105. After the OSM rotation was expanded to all supervisors in or around 2020, Alford and other supervisors collectively questioned why they were not being compensated for on-call time. The supervisors located NYU Langone's on-call policy and inquired with leadership about whether they were entitled to compensation under that policy. Leadership informed them that the policy did not apply to their roles and that they were not entitled to any additional compensation.

106. Alford contacted NYU Langone's Corporate Compliance department to inquire whether the lack of compensation for OSM duties was appropriate.

107. Following this inquiry, NYU Langone revised the OSM schedule to include additional members of management and provided supervisors with a Standard Operating Procedure outlining OSM duties.

108. However, despite these changes made after Alford's complaint, NYU Langone continued to schedule supervisors for OSM without compensation and did not provide designated breaks during OSM shifts.

***Plaintiff Tamara Augustin***

109. Plaintiff Tamara Augustin has been employed by NYU Langone from in or around May 2019 through the present as a Supervisor-Patient Access.

110. From in or around May 2019 until the present, Augustin's regular work schedule has been Monday through Friday from approximately 8:00 AM until approximately 4:00 PM, totaling 40 hours worked per week.

111. Throughout her employment, Augustin was required to perform OSM duties on a rotating basis without compensation. Records document Augustin's OSM assignments on numerous occasions from at least 2022 through 2025, including assignments covering overnight shifts, early morning shifts, and back-to-back weekend assignments, all performed outside her regular scheduled hours and without overtime compensation.

112. In or around April 2025, Augustin sent an email to senior NYU Langone leadership requesting a review of the OSM rotation process. In that email, Augustin noted that despite being the third most senior member of the rotation, she had been consistently assigned OSM nearly every weekend since the SOP was implemented, and that only three of the weekends she was not assigned OSM were attributable to pre-approved PTO or a bereavement.

113. Augustin stated that "the ongoing expectation to perform OSM duties without any recognition or reward nearly every weekend has become both demoralizing and draining," and that the resulting fatigue had impacted her weekday performance and contributed to documented lateness feedback she had received from management.

114. On multiple occasions, Augustin requested compensation days after performing particularly burdensome OSM shifts.

115. In or around May 2022, Augustin requested a compensation day for an OSM shift performed on May 28, 2022, documenting 18 specific calls and issues she handled between 2:18 AM and 7:31 PM.

116. That request was approved only after Augustin provided detailed written documentation.

117. In or around September 2025, Augustin again requested a compensation day for OSM work performed on August 30 and September 1, 2025, noting she had received a high volume of calls and issues requiring active follow-up and resolution.

118. Augustin was required to follow up multiple times over several weeks before receiving any response to that request.

119. The pattern of Augustin's compensation day requests—requiring detailed written justification, multiple follow-ups, and weeks-long delays in response—illustrates NYU Langone's practice of discouraging supervisors from seeking any recognition for OSM work and its systematic failure to provide overtime compensation for all OSM hours worked.

***Plaintiff John Davi***

120. Plaintiff John Davi has been employed by NYU Langone from September 16, 2013 through the present, initially as a Registrar and promoted to Supervisor-Patient Access in or around June 2019.

121. From in or around June 2019 until the present, Davi's regular work schedule has been Monday through Friday, from approximately 5:30 AM until approximately 1:30 PM, totaling 40 hours worked per week.

122. Despite over thirteen years of experience at NYU Langone and responsibilities spanning operations, staff oversight, and revenue cycle processes, Davi has at no point held genuine authority to hire, fire, set wages, or make independent personnel decisions—illustrating that the Supervisor-Patient Access title carried no meaningful management authority regardless of tenure or experience.

123. In or around October 2025, Davi requested a compensatory day off after performing extended OSM hours on October 7 and 8, 2025.

124. Davi was required to send follow-up emails on October 8, October 21, and October 22, 2025 before receiving any response to his request.

125. In his October 22 email, Davi specifically requested "the opportunity to briefly meet tomorrow to discuss how this request has been handled so far."

126. The need for three follow-up communications over more than two weeks to obtain approval for a single compensatory day after performing substantial uncompensated OSM work further illustrates NYU Langone's practice of discouraging supervisors from seeking any recognition for OSM hours worked. As a result of the May 2026 schedule restructuring announced following NYU Langone's receipt of Plaintiffs' wage claims, Davi—who had worked Monday through Friday from 5:30 AM to 1:30 PM for the entirety of his tenure as a Supervisor-Patient Access since June 2019—was informed that his schedule would be changed to Tuesday through Friday from 1:00 PM to 9:00 PM and Saturday from 7:00 AM to 3:00 PM.

127. This restructuring fundamentally altered a schedule Davi had maintained for nearly seven years, and followed NYU Langone's receipt of written notice of Plaintiffs' wage claims by approximately eight months.

***Plaintiff Alexandra Flowers***

128. Plaintiff Alexandra Flowers was employed by NYU Langone from March 8, 2023 through December 2, 2025 as a Supervisor-Patient Access working the overnight shift, earning an annual salary of $87,000.

129. From in or around March 8, 2023 until her resignation on December 2, 2025, Flowers' regularly worked Monday through Friday from approximately 12:00 AM until approximately 8:00 AM, totaling 40 hours worked per week. During those shift, Flowers was the

sole supervisor on-site responsible for operations at two NYU Langone locations simultaneously—Cobble Hill (Brooklyn) and Manhattan—covering a department of approximately 200 employees.

130. In practice, Flowers regularly worked well in excess of her scheduled 40 hours per week.

131. Flowers regularly clocked in early to cover departing supervisors when colleagues were sick or absent but was paid only from her scheduled shift start time.

132. Flowers was also required to attend training sessions and departmental meetings after her scheduled hours without compensation, and was assigned OSM duties on weekends and during overnight hours requiring her to carry a company laptop and phone and remain available at all times.

133. Over her full period of employment, Flowers estimates she worked approximately 60 hours per week on average when accounting for pre-shift work, post-shift meetings, and OSM responses.

134. As the sole overnight supervisor covering two hospital locations, Flowers was unable to take uninterrupted meal breaks during her shifts.

135. Flowers is diabetic, and the systematic inability to eat as scheduled during her shifts negatively impacted her health. To manage her blood sugar when she could not take a proper meal break, Flowers kept candy and juice in her office.

136. NYU Langone required Flowers to perform OSM duties even when she was ill or hospitalized, and she was never compensated for on-call time. During on-call periods, Flowers received between 2 and 3 calls on some occasions and as many as 6, 7, or more on others, with holiday coverage periods being particularly demanding.

137. In or around May 2025, Flowers went out on leave due to a mental health crisis she attributes to her work conditions. She was diagnosed with anxiety and severe major depressive disorder related to her job and was hospitalized for six days.

138. In or around November 2025, Flowers informed NYU Langone management that her physician and therapist had advised her not to return to the overnight shift. When Flowers inquired about the availability of a day shift position as an alternative, she was informed that no such position was available, despite a 3:00 PM to 11:00 PM shift existing at the time.

139. NYU Langone's Human Resources department advised Flowers that she was required to return to work by January 2, 2026, or her employment would be terminated. Fearing termination, and unable to return to the overnight shift on her physicians' advice, Flowers resigned on December 2, 2025. Flowers' resignation constituted a constructive discharge resulting directly from NYU Langone's failure to accommodate her medical needs and the work conditions that caused her hospitalization.

***Plaintiff Teddy Jean-Jacques***

140. Plaintiff Teddy Jean-Jacques has been employed by NYU Langone from in or around 2008 through the present, initially as a per diem employee, becoming full-time in 2010, and promoted to Supervisor-Patient Access in or around April 2016. As of July 2020, Jean-Jacques earned an annual base salary of $97,559.36.

141. From in or around 2016 until in or around 2023, Jean-Jacques' regular work schedule was Wednesday through Friday from 4:00 PM to 12:00 AM and Saturdays and Sundays from 12:00 PM to 8:00 PM, , totaling 40 hours worked per week.

142. From in or around 2023 until the present, Jean-Jacques has been working Monday through Friday from approximately 7:30 AM until approximately 3:30 PM, totaling 40 hours worked per week.

143. In or around 2022, Jean-Jacques participated in a meeting with NYU Langone's senior director in which Jean-Jacques directly informed her that it was not feasible to have someone on call for 48 hours.

144. Approximately two months after supervisors raised this concern, NYU Langone's upper management responded not by reducing the on-call burden but by formalizing and expanding it—establishing the mandatory OSM weekend rotation under which all supervisors were required to perform OSM duties on a rotating basis.

145. This sequence demonstrates that NYU Langone was directly informed by its own supervisors that the on-call burden was unreasonable, and chose to institutionalize that burden rather than address it.

***Plaintiff Nikolas Kimmel***

146. Plaintiff Nikolas Kimmel has been employed by NYU Langone from February 24, 2022 through the present as a Supervisor-Patient Access at NYU Langone Hospital-Brooklyn, earning an annual salary of $90,500.

147. Throughout his employment, Kimmel has worked Monday through Friday in three different shifts—initially 12:00 AM – 8:00 AM, then 12:00 PM – 8:00 PM, and currently 4:00 PM – 12:00 AM—all within the same Supervisor-Patient Access position, without promotion, demotion, or any change in compensation, and without receiving any shift differential for overnight work, for a total of approximately 40 hours worked per week.

148. Throughout his employment, Kimmel was required to perform OSM duties on a rotating basis without compensation, covering weekends and holiday periods including Christmas, New Year's, and other dates, spanning at least 2023 through 2026.

149. In or around December 2025, when Kimmel sent an OSM notification email to staff, Manager Melina Da Silva responded that it was "not the correct format for this email" and directed him to resend it according to a specific format previously distributed by management. This incident illustrates the degree of management control and oversight exercised over supervisors' OSM responsibilities—contradicting any characterization of OSM as informal or voluntary.

***Plaintiff Francis Rodriguez***

150. Plaintiff Francis Rodriguez has been employed by NYU Langone from May 11, 2016 through the present, initially as a Registrar and promoted to Supervisor-Patient Access at the NYU Langone Hospital-Brooklyn campus in or around August 5, 2017, earning a current annual salary of $91,613.72.

151. From in or around 2019 until the present, Rodriguez's regular work schedule has been Monday through Friday from 8:00 AM to 4:00 PM, totaling 40 hours worked per week.

152. Throughout his tenure as a supervisor, Rodriguez was required to perform OSM duties on a rotating basis without compensation, covering weekends and holidays from at least 2019 through 2026.

153. As described above, in or around September 2021, Rodriguez directly inquired with NYU Langone's Human Resources department about whether his position qualified for on-call compensation under NYU Langone's own Policy 3.9, and received written confirmation from HR that no such compensation policy applied to his location.

154. In addition to his assigned OSM shifts, Rodriguez raised concerns with Manager Melina Da Silva about being contacted by staff during periods when he was not officially scheduled for OSM, requesting that management audit the issue.

155. Rodriguez noted that while supervisors understood their on-call responsibilities, staff needed to adhere to proper procedures for contacting management — an acknowledgment that the boundaries of OSM were routinely exceeded even beyond the formal rotation schedule, meaning Rodriguez's actual uncompensated on-call burden was greater than his assigned OSM shifts alone reflect.

***Plaintiff Everton Williams***

156. Plaintiff Everton Williams has been employed by NYU Langone for approximately 25 years through the present, earning a current annual salary of approximately $106,000. Williams was promoted to Supervisor-Patient Access in or around 2011.

157. From in or around January 2026 until the present, Williams' regular work schedule has been Monday through Friday from 7:00 AM to 3:00 PM, totaling 40 hours worked per week. Prior to this schedule, Williams worked Monday through Friday from 9:00 AM to 5:00 PM.

158. Throughout his tenure as a supervisor, Williams was required to perform OSM duties on a rotating basis without compensation, totaling approximately 5 to 16 hours additional hours per week beyond his regular scheduled hours.

159. When supervisors previously raised concerns about compensation for OSM duties, Williams was informed by management that supervisors were exempt and not entitled to any additional compensation.

***Plaintiff Hyman Skeen***

160. Plaintiff Hyman Skeen has been employed by NYU Langone from June 30, 2023 through the present as a Manager-Patient Access, earning a current annual salary of approximately $110,250.

161. From in or around June 28, 2026 until the present, Skeen regular work schedule has been Monday through Friday from 6:00 AM to 2:00 PM, totaling forty (40) hours worked per week. Prior to this schedule, Skeen worked Monday through Friday from 7:00 AM to 3:00 PM.

162. In addition to his regular scheduled hours, NYU Langone required Skeen to perform mandatory OSM duties without additional compensation, on a rotating basis covering blocks of 12:00 AM–8:00 AM, 8:00 AM–4:00 PM, and 4:00 PM–12:00 AM.

163. NYU Langone required Skeen to perform 24-hour OSM coverage on holidays, including this past New Year's, without holiday pay.

164. Skeen, together with Plaintiff Lotisha Lofters, complained to NYU Langone leadership on multiple occasions that the OSM and on-call burden was unsustainable and uncompensated.

165. NYU Langone held meetings with them but failed to take any corrective action.

***Plaintiff Lotisha Lofters***

166. Plaintiff Lotisha Lofters was employed by NYU Langone as a Manager-Patient Access from June 30, 2023 through July 2, 2026, earning an annual salary that increased from approximately $100,000 to $110,000 over the course of her employment.

167. Plaintiff Lofters's regular work schedule was Monday through Friday from 10:00 AM to 6:00 PM, totaling forty (40) hours per week.

168. In addition to her regular scheduled hours, NYU Langone required Plaintiff Lofters to perform mandatory, uncompensated OSM and on-call duties, including receiving calls at home before her scheduled start time and continuing to work after her scheduled end time until as late as 9:00 PM.

169. On one occasion, Plaintiff Lofters worked approximately 56 consecutive hours over a single weekend, from Friday through Monday, inclusive of her on-site hours and OSM duties.

170. NYU Langone required Plaintiff Lofters to work 24-hour holiday coverage shifts and told her she was "not entitled" to holiday pay.

**FIRST CAUSE OF ACTION**
**FOR UNPAID OVERTIME WAGES UNDER THE FLSA**
*(On Behalf of Plaintiffs and the FLSA Collective Plaintiffs)*

171. Plaintiffs repeat and reallege each and every allegation set forth above as if fully set forth herein.

172. At all relevant times, Plaintiffs and the FLSA Collective Plaintiffs were employees of NYU Langone within the meaning of the FLSA, 29 U.S.C. § 203(e), and NYU Langone was their employer within the meaning of the FLSA, 29 U.S.C. § 203(d).

173. Pursuant to the applicable provisions of the FLSA, Plaintiffs and the FLSA Collective Plaintiffs were entitled to overtime compensation of one and one-half times their regular rates of pay for all hours worked in excess of forty (40) per week.

174. Plaintiffs and the FLSA Collective Plaintiffs were misclassified as exempt from overtime under the executive exemption of the FLSA. Their job titles as “supervisors” and “managers” inaccurately convey their actual job descriptions and responsibilities. As set forth above, Plaintiffs and the FLSA Collective Plaintiffs lacked the genuine supervisory authority required for the executive exemption, including the power to hire, fire, or discipline employees,

set wages or schedules, or exercise discretion and independent judgment on matters of significance. Their actual duties consisted primarily of non-exempt clerical work, quality control, data entry, and compliance with established policies and procedures.

175. As set forth above, Plaintiffs and the FLSA Collective Plaintiffs regularly worked in excess of forty (40) hours per week for which they were not paid overtime wages, including through: (a) regular scheduled hours of 40 to 48 hours per week; (b) mandatory OSM duties totaling approximately 5–16 additional hours per week; (c) pre-shift work including early clock-ins for coverage; (d) post-shift work including attendance at training and meetings after scheduled hours; and (e) work performed during meal periods that were interrupted or not provided.

176. Throughout the relevant period, NYU Langone knowingly failed to pay Plaintiffs and the FLSA Collective Plaintiffs overtime wages of one and one-half times their regular rates of pay for all hours worked in excess of forty (40) per week. NYU Langone's failure to pay overtime was willful, as evidenced by its classification of Plaintiffs as exempt despite knowing they lacked genuine supervisory authority, its written confirmation that no on-call compensation policy applied to Plaintiffs' roles, its implementation of formal OSM policies acknowledging the burden of OSM work while continuing to deny overtime compensation, and its failure to remedy violations despite repeated complaints from multiple supervisors over an extended period.

177. As a result of NYU Langone's willful violations of the FLSA, Plaintiffs and the FLSA Collective Plaintiffs are entitled to recover all unpaid overtime wages for the three-year period preceding the filing of this Complaint, liquidated damages in an amount equal to one hundred percent of the unpaid overtime wages due, prejudgment interest, reasonable attorneys' fees, and costs.

**SECOND CAUSE OF ACTION**
**FOR UNPAID OVERTIME WAGES UNDER THE NYLL**
*(On Behalf of Plaintiffs and the Rule 23 Class)*

178. Plaintiffs repeat and reallege each and every allegation set forth above as if fully set forth herein.

179. At all relevant times, Plaintiffs and the Class Members were employees of NYU Langone within the meaning of the NYLL, § 190, and NYU Langone was their employer within the meaning of the NYLL, § 190.

180. Pursuant to the applicable provisions of the NYLL and the New York State Department of Labor regulations, Plaintiffs and the Class Members were entitled to overtime compensation of one and one-half times their regular rates of pay for all hours worked in excess of forty (40) per week. NYLL § 160; 12 NYCRR § 142-2.2.

181. Plaintiffs and the Class Members were misclassified as exempt from overtime under the NYLL. As set forth above, Plaintiffs and the Class Members lacked the genuine supervisory authority required for any overtime exemption under the NYLL, and their actual duties consisted primarily of non-exempt clerical work, quality control, data entry, and compliance with established policies and procedures.

182. As set forth above, Plaintiffs and the Class Members regularly worked in excess of forty (40) hours per week for which they were not paid overtime wages, including through: (a) regular scheduled hours of 40 to 48 hours per week; (b) mandatory OSM duties totaling approximately 5–16 additional hours per week; (c) pre-shift work including early clock-ins for coverage; (d) post-shift work including attendance at training and meetings after scheduled hours; and (e) work performed during meal periods that were interrupted or not provided.

183. Throughout the relevant period, NYU Langone knowingly failed to pay Plaintiffs and the Class Members overtime wages as required by the NYLL. NYU Langone's failure was willful, as evidenced by the same conduct described in the First Cause of Action above, and by its additional failures to provide accurate wage notices and wage statements that would have disclosed to Plaintiffs and Class Members the full extent of the compensation owed to them.

184. As a result of NYU Langone's willful violations of the NYLL, Plaintiffs and the Class Members are entitled to recover all unpaid overtime wages for the period covered by the applicable statute of limitations, liquidated damages in an amount equal to one hundred percent of the unpaid wages due, prejudgment interest, reasonable attorneys' fees, and costs.

## THIRD CAUSE OF ACTION
## FOR FAILURE TO PROVIDE WAGE NOTICES UNDER THE NYLL

*(On Behalf of Plaintiffs Singh, Flowers, Kimmel, Skeen, Lofters, and the Rule 23 Class)*

185. Plaintiffs Singh, Flowers, Kimmel, Skeen and Lofters repeat and reallege each and every allegation set forth above as if fully set forth herein.

186. At all relevant times, Plaintiffs Singh, Flowers, Kimmel, Skeen, Lofters and the Class Members were employees of NYU Langone within the meaning of the NYLL, § 190, and NYU Langone was their employer within the meaning of the NYLL, § 190.

187. NYLL § 195(1) requires employers to furnish each employee, at the time of hire and annually thereafter, a wage notice containing accurate information including the employee's regular and overtime rates of pay, the basis of pay, allowances claimed, the designated payday, and other information required by law.

188. NYU Langone failed to furnish Plaintiffs Singh, Flowers, Kimmel, Skeen, Lofters and the Class Members with wage notices at the time of their hire or at any time thereafter containing the information required by NYLL § 195(1). In particular, NYU Langone's wage

notices failed to accurately reflect Plaintiffs Singh, Flowers, Kimmel, Skeen, Lofters' and Class Members' actual hours of work, compensation structure, or entitlement to overtime wages.

189. By failing to provide accurate wage notices, NYU Langone deprived Plaintiffs Singh, Flowers, Kimmel, Skeen, Lofters and the Class Members of their statutory right to complete and accurate information about the terms and conditions of their compensation, hindered their ability to identify and contest NYU Langone's wage and hour violations, and enabled NYU Langone to conceal its unlawful pay practices from its employees.

190. As a result of NYU Langone's failure to provide wage notices as required by NYLL § 195(1), Plaintiffs Singh, Flowers, Kimmel, Skeen, Lofters and the Class Members are entitled to statutory damages of $50.00 per day for each day the violation occurred, up to a maximum of $5,000.00 per person, together with reasonable attorneys' fees and costs. NYLL § 198(1-b).

**FOURTH CAUSE OF ACTION**
**FOR FAILURE TO PROVIDE WAGE STATEMENTS UNDER THE NYLL**
*(On Behalf of Plaintiffs and the Rule 23 Class)*

191. Plaintiffs repeat and reallege each and every allegation set forth above as if fully set forth herein.

192. At all relevant times, Plaintiffs and the Class Members were employees of NYU Langone within the meaning of the NYLL, § 190, and NYU Langone was their employer within the meaning of the NYLL, § 190.

193. NYLL § 195(3) requires employers to furnish each employee, with every payment of wages, an accurate wage statement listing the dates of work covered by the payment, the employee's name, the employer's name and address, the rate or rates of pay and basis thereof, gross wages, deductions, allowances, and net wages.

194. NYU Langone's failure to furnish accurate wage statements caused Plaintiffs and the Class Members concrete, downstream injury. Because the wage statements omitted OSM hours, pre-shift and post-shift work, and time worked during interrupted meal periods, Plaintiffs and the Class Members were deprived of the accurate hours-worked and pay-rate information necessary to detect that they had been underpaid. Had accurate statements been furnished, Plaintiffs and the Class Members would have identified the underpayments and demanded the wages owed and would have received those wages sooner. As a direct result of the inaccurate statements, Plaintiffs and the Class Members were deprived of the use of wages lawfully owed to them for a longer period than they otherwise would have been, and were delayed in recovering, and in some instances have not recovered, compensation to which they were entitled.

195. As a result of NYU Langone's failure to provide accurate wage statements as required by NYLL § 195(3), Plaintiffs and the Class Members are entitled to statutory damages of $250.00 for each work day the violation occurred, up to a maximum of $5,000.00 per person, together with reasonable attorneys' fees and costs. NYLL § 198(1-d).

## FIFTH CAUSE OF ACTION
## FOR BREACH OF CONTRACT AND UNJUST ENRICHMENT

*(On Behalf of Plaintiffs and the Rule 23 Class)*
*(Plead in the Alternative)*

196. Plaintiffs repeat and reallege the allegations of Paragraphs 1-140 set forth above as if fully set forth herein.

197. When Plaintiffs and the Class Members entered into employment with NYU Langone, the parties formed express and/or implied contracts, which included inherent duties of good faith and fair dealing, to compensate employees for all hours worked and to provide working conditions in compliance with applicable labor laws.

198. Plaintiffs and the Class Members performed all services required under their employment agreements, including working substantial hours beyond their scheduled shifts to perform OSM duties, attending off-schedule meetings, providing coverage, and remaining available during off-hours. NYU Langone's failure to pay for these hours and its failure to provide uninterrupted meal breaks breached its obligations under those agreements.

199. NYU Langone's practice of representing to employees that they would not be compensated for OSM duties despite requiring such work, and instructing supervisors to refrain from attending meetings if they expected compensation for that time, constitutes bad faith and a breach of the implied covenant of good faith and fair dealing.

200. Absent an implied contract, by virtue of its conduct as alleged herein, NYU Langone was unjustly enriched by Plaintiffs' and Class Members' uncompensated labor. The circumstances are such that it would be inequitable to permit NYU Langone to retain the benefit of that labor without paying fair value for it.

201. As a direct and proximate result of NYU Langone's breach of contract and unjust enrichment, Plaintiffs and the Class Members are entitled to recover the full amount of wrongfully withheld compensation, punitive damages due to NYU Langone's egregious and bad faith conduct, reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

## DEMAND FOR A JURY TRIAL

202. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff, FLSA Collective Plaintiffs, and Class Plaintiffs demand a trial by jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, the FLSA Collective Plaintiffs, and the Class Members respectfully request that this Court enter judgment against Defendant NYU Langone Hospitals as follows:

a. A judgment declaring that the practices complained of herein are unlawful and in willful violation of the FLSA and the NYLL;

b. Preliminary and permanent injunctions against Defendant and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

c. An order restraining Defendant from any retaliation against Plaintiffs, FLSA Collective Plaintiffs, and Class Members for participation in any form in this litigation;

d. Designation of this action as an FLSA collective action on behalf of Plaintiffs and the FLSA Collective Plaintiffs, and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all FLSA Collective Plaintiffs, apprising them of the pendency of this action, permitting them to assert timely FLSA claims by filing a consent to join pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

e. Certification of the state law claims in this action as a class action pursuant to F.R.C.P. 23, designation of Plaintiffs as Class Representatives, and designation of Plaintiffs' counsel as Class Counsel;

f. All damages that Plaintiffs, the FLSA Collective Plaintiffs, and the Class Members have sustained as a result of Defendant's conduct, including all unpaid overtime wages and any shortfall between wages paid and those due under the law that Plaintiffs, the FLSA Collective Plaintiffs, and the Class Members would have received but for Defendant's unlawful payment practices;

g. An award of unpaid overtime wages for all hours worked in excess of 40 hours per week, including OSM duties, pre-shift and post-shift work, and work performed during interrupted or denied meal periods, under the FLSA and the NYLL;

h. Statutory damages of $50.00 per day per person, up to a maximum of $5,000.00 per person, for Defendant's failure to provide wage notices to Plaintiffs Singh, Flowers, Kimmel, Skeen, Lofters as required by NYLL § 195(1), pursuant to NYLL § 198(1-b);

i. Statutory damages of $250.00 per day per person, up to a maximum of $5,000.00 per person, for Defendant's failure to provide accurate wage statements as required by NYLL § 195(3), pursuant to NYLL § 198(1-d);

j. Liquidated damages in an amount equal to one hundred percent of all unpaid wages due, pursuant to the FLSA and the NYLL;

k. Prejudgment and post-judgment interest as provided by law;

l. Reasonable attorneys' fees, costs, and disbursements incurred in connection with this action, including expert witness fees, and a service award to Plaintiffs; and

m. Such other and further relief as this Court finds necessary and proper.

Dated: New York, New York
July 21, 2026

**JOSEPH & NORINSBERG LLC**

By: ______________________

Elizabeth Pollock *(admitted pro hac vice)*
Jonathan Trinidad Lira, Esq.
Joseph & Norinsberg, LLC
825 Third Avenue, Suite 2100
New York, New York 10022
Phone: 212-227-5700
epollock@employeejustice.com

jlira@employeejustice.com